Marianne A. ENGBLOM and Charles E. Palmer, Plaintiffs,

v.

Hugh L. CAREY, Governor of the State of New York, Richard D. Hongisto, Acting Commissioner, New York State Department of Correctional Services, Joseph C. Snow, Superintendent of the Mid-Orange Correctional Facility, Major-General Vito J. Castellano, Chief of Staff to the Governor of New York, New York National Guard, Lieutenant-Colonel Justin M. Queally, an officer of the 106th Maintenance Battalion of the New York National Guard, Captain "John" Drew, an officer of the 101st Signal Battalion of the New York National Guard and Various Officers and Enlisted Men, Members of the New York National Guard, Defendants.

No. 79 Civ. 4785 (RWS).

United States District Court, S.D. New York.

July 15, 1983.

Ricken, Goldman, Sussman & Blythe, Kingston, N.Y., for plaintiffs; Alan N. Sussman, Kingston, N.Y., of counsel.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for defendants; Melvin R. Leventhal, Deputy First Asst. Atty. Gen., Arlene R. Silverman, Asst. Atty. Gen., New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiffs Marianne E. Engblom and Charles E. Palmer, two correction officers at the Mid-Orange Correctional Facility ("Mid-Orange"), brought this action seeking damages under 42 U.S.C. § 1983 against the Governor of New York and various prison officials of the State of New York (collectively "the defendants"). Currently before the court is the defendants' motion for summary judgment pursuant to Rule 56 Fed.R. Civ.P. For the reasons set forth below, the motion is granted and the complaint dismissed.

The complaint in this action alleged that the plaintiffs' Due Process and Third Amendment rights were violated during a statewide strike of correction officers in April and May of 1979 when they were evicted from their facility-residences without notice or hearing and their residences were used to house members of the National Guard without their consent. The facts and circumstances of this case are set forth in prior opinions, *Engblom v. Carey*, 522 F.Supp. 57 (S.D.N.Y.1981), *aff'd in part, rev'd in part*, 677 F.2d 957 (2d Cir.1982), and familiarity with these opinions is assumed.

Initially, this court granted the defendants' motion for summary judgment dismissing the complaint on the ground that the plaintiffs did not have a sufficient possessory interest in their facility-residences to entitle them to protection under the Third Amendment and Due Process Clause of the Fourteenth Amendment. The Second Circuit affirmed the dismissal of the Due Process claim on the ground that adequate post-deprivation proceedings were afforded to protect the plaintiffs' rights. *Engblom v. Carey, supra*, 677 F.2d at 965–66. The Court of Appeals agreed with this court's conclusion that the National Guards-

men are "Soldiers" within the meaning of the Third Amendment and that they are generally state employees under the control of the Governor. *Id.* at 961. The Court of Appeals also agreed that the Third Amendment is incorporated into the Fourteenth Amendment for application to the states. *Id.* However, the Second Circuit reversed the dismissal of the Third Amendment claim, finding that it could not say as a matter of law that the plaintiffs' possessory interests in their living quarters were not entitled to the protection of the Third Amendment. *Id.* at 964. The court reversed and remanded the dismissal of the Third Amendment claim for proceedings not inconsistent with its opinion. *Id.* at 966.

On remand, the defendants have moved for summary judgment asserting the qualified or "good faith" immunity defense, *see Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), and in the alternative, asserting that the defendants are shielded from damage liability due to the absence of any personal involvement, *see McKinnon v. Patterson,* 568 F.2d 930 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Indeed, the Second Circuit recognized that these issues had not been decided by this court in its prior decision since it had concluded that there were no protectable interests involved. *See Engblom v. Carey, supra,* 677 F.2d at 961 n. 10.

■ Qualified or "good faith" immunity is an affirmative defense that must be pleaded by a defendant official. *Harlow v. Fitzgerald, supra,* 102 S.Ct. at 2737 (1982) (citing *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). At argument, counsel for defendants represented that the affirmative defense was inadvertently omitted in the answer with respect to defendant Hongisto. The plaintiffs were on notice, of course, that the defense would be raised with respect to *all* of the defendants. For the purposes of this motion, the answer is deemed to have been amended to assert the defense against all of the defendants.

In its most recent pronouncement on the qualified immunity doctrine, the United States Supreme Court stated:

[W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established statutory or constitutional rights* of which a reasonable person would have known.

*Harlow v. Fitzgerald, supra,* 102 S.Ct. at 2738 (citations and footnote omitted) (emphasis added). In *Fitzgerald,* the Court recognized that its prior decisions had established that the "good faith" defense had both an "objective" and a "subjective" aspect, the objective element involving a "presumptive knowledge and respect for 'basic, unquestioned constitutional rights' " and the subjective element referring to " 'permissible intentions.' " 102 S.Ct. at 2737 (citing *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)). In *Fitzgerald* the Court adjusted the "good faith" standard established by its prior decisions by rejecting the subjective aspect. The Court explained the ramifications of its decision as follows:

Reliance on the objective reasonableness of an official's conduct, *as measured by reference to clearly established law,* should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. *On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct*

*not previously identified as unlawful.* Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

*Id.* 102 S.Ct. at 2739 (footnotes omitted) (emphasis added). The inquiry, then, is what the currently applicable law is and whether the law was "clearly established" during April and May of 1979 when the events in question took place.[1]

On appeal, the Second Circuit noted that "[f]or the first time a federal court is asked to invalidate as violative of the Third Amendment the peacetime quartering of troops 'in any house, without the consent of the Owner.'" *Engblom v. Carey, supra,* 677 F.2d at 959.[2] The Court acknowledged that aside from this court's prior opinion in this case, "there are no reported opinions involving the literal application of the Third Amendment," and that "several far-fetched, metaphorical applications have been urged and summarily rejected." *Id.* at n. 1 (citations omitted).

The Second Circuit opened its discussion of the Third Amendment claim with the following introduction: "We first address the novel claim based on the Third Amendment, a provision rarely invoked in the federal courts." *Id.* at 961. The court set forth the issue to be decided and noted the absence of any caselaw on point:

The crux of appellants' Third Amendment claim depends on whether the nature of their property interest in their residences is sufficient to bring it within the ambit of the Third Amendment's proscription against quartering troops "in any house, without the consent of the Owner." *The absence of any case law directly construing this provision presents a serious interpretive problem, and little illumination can be gleaned from the debates of the Constitutional Convention. We are thus left with the language of the Third Amendment and analogies to other areas of law.*

*Id.* at 961–62 (emphasis added). The court went on to reject a technical and literal reading of the language of the Third Amendment which would only protect fee owners of houses and instead adopted a reading that protects property-based privacy interests "recognized and permitted by society as founded on lawful occupation or possession with a legal right to exclude others." *Id.* at 962 (citations omitted). The court concluded that in the context of the summary judgment motion, the record, viewed most favorably to the appellants, did not "preclude a finding that they had a substantial tenancy interest in their staff housing, and that they enjoyed significant privacy due to their right to exclude others from what was functionally their homes." *Id.* at 964 (citations omitted).

In light of the foregoing, it would be difficult to conclude that prior to the Second Circuit's decision, the plaintiffs' Third Amendment rights were "clearly established" as contemplated by the Supreme Court in *Fitzgerald.* The Second Circuit's decision in 1982 was the first involving the literal application of the Third Amendment. In terms of preexisting caselaw, it cannot be said that the defendants should have

---

**1.** The plaintiffs have not disputed, in their motion papers, that the defendants were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. *See Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978); *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983).

**2.** The Third Amendment provides:

No soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law.

known that housing the National Guard in facility-residences given the "necessity of quick action" would violate the plaintiffs' Third Amendment rights.

The plaintiffs' argument that the Second Circuit "did nothing to interpret or define the Third Amendment in a way that it had not been known before" is unpersuasive. Certainly, the Second Circuit itself viewed the issues before it as "novel," acknowledged that there was a broader, more flexible interpretation of the Third Amendment in addition to a technical and literal one, and concluded that the former was the correct interpretation. While the language in the Third Amendment may be less "abstract" than the "due process" language contained in the Fourteenth Amendment, it does not follow that the ambit of protection afforded by the Third Amendment is not subject to differing interpretations. Compare Engblom v. Carey, supra, 677 F.2d 957, with id. at 966 (Kaufman J., dissenting).

The plaintiffs also argue that the defendants should have known that they were interfering with certain privacy interests of the plaintiffs which have been protected in analogous contexts, namely, in the areas of the Fourth Amendment, and the Due Process Clause. This, however, is the analysis utilized by the Second Circuit in deciding the "novel" issue before it. See Engblom v. Carey, supra, 677 F.2d at 962 ("[w]e reject such a formalistic construction for the same reasons that it has been rejected in analogous contexts.") It would be unreasonable to expect the defendants themselves to perform this analysis and to anticipate the law as set forth by the Court of Appeals in 1982.

Finally, the defendants contend that the doctrine of qualified official immunity is inapplicable because the eviction and subsequent occupancy of the plaintiffs' rooms was "part of a single, malicious transaction conducted by defendants ... for the purpose of harassing and punishing plaintiffs and violating their constitutional rights." Without more, it would appear that the plaintiffs seek to rely on the "subjective" element of the qualified immunity defense in order to avoid summary judgment. As

indicated above, the Supreme Court in Fitzgerald rejected reliance upon "bare allegations of malice," 102 S.Ct. at 2738, and dismissed as inappropriate any "subjective" inquiry into the "good faith" of the official involved, see Ward v. Johnson, 690 F.2d 1098, 1111 (4th Cir.1982). The test is an objective one. See Briggs v. Goodwin, 698 F.2d 486, 491 (D.C.Cir.1983); Ward v. Johnson, 690 F.2d 1098, 1111 (4th Cir.1982) (en banc); Williams v. Bennett, 689 F.2d 1370, 1385–86 (11th Cir.1982); Saldana v. Garza, 684 F.2d 1159, 1163–64 n. 15 (5th Cir.1982), cert. denied, —— U.S. ——, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983); Piccollela v. Rieck, 555 F.Supp. 27, 27–28 (S.D.N.Y.1982); Benford v. American Broadcasting Company, Inc., 554 F.Supp. 145, 148–50 (D.Md.1982); Lowe v. Carter, 554 F.Supp. 831, 835–36 (E.D.Mich.1982); Albers v. Whitley, 546 F.Supp. 726, 736 (D.Ore.1982); Thompson v. Penna. Parole Bd. Member Jefferson, 544 F.Supp. 173, 175 n. 3 (E.D.Pa.1982); Visser v. Magnarelli, 542 F.Supp. 1331, 1337 (N.D. N.Y.1982).

In any event, to the extent they claim to assert more than "bare allegations of malice", the plaintiffs have not set forth any evidence which raises a genuine question of material fact on the issue of whether the defendants acted in bad faith or with personal malice. At most, the plaintiffs endeavor to show based primarily on deposition testimony that the defendants intended to use the facility-residences to house the National Guard several days before they actually did so. Without more, this does not raise a genuine issue of fact concerning the defendants' motives. The cases cited by the plaintiffs in this connection are distinguishable. For example, in Lykken v. Vavreck, 366 F.Supp. 585, 595 (D.Minn.1973), the defendants, not faced with a stressful and unstable situation calling for discretion and on-the-spot evaluation, engaged in bad faith law enforcement. Id. at 594 (quoting Whirl v. Kern, 407 F.2d 781, 790 (5th Cir.), cert. denied, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969)). In Carr v. Bell, 492 F.Supp. 832 (N.D.Fla.1980), a person who clearly had not violated state law was arrested without probable cause. In Halperin

*v. Kissinger,* 424 F.Supp. 838, 843 (D.D.C. 1976), *aff'd in part, rev'd in part,* 606 F.2d 1192 (D.C.Cir.1979), *aff'd,* 452 U.S. 713, 100 S.Ct. 3132, 69 L.Ed.2d 367 (1981), a wiretap developed into "a dragnet which lacked temporal and spatial limitation" which was clearly incompatible with the Fourth Amendment. Unlike the situation at bar, these cases involved blatant violations of well-established constitutional rights. The defendants here have demonstrated that their actions were taken during an emergency as "prompt-counter measures" to reports of vandalism and improper use of state facilities by striking officers. The plaintiffs provide no more than a conclusory allegation that the eviction was accomplished "for the purpose of harassing and punishing plaintiffs and violating their constitutional rights." [3]

Thus, I conclude that as a matter of law plaintiffs' Third Amendment rights were not "clearly established" at the time of the events in question and therefore that the defendants are protected by a qualified immunity and entitled to summary judgment. Consequently, it is unnecessary to address the defendants' argument in the alternative that they are shielded from damage liability due to the absence of any personal involvement.

For the reasons stated above, defendants' motion for summary judgment is granted and the clerk is directed to enter judgment dismissing the complaint.

IT IS SO ORDERED.

---

3. It should be noted that the plaintiffs' suggestion that their evictions may have been a penalty for their alleged participation in an illegal strike was acknowledged by the Second Circuit in connection with the plaintiffs' Due Process claim. *Engblom v. Carey, supra,* 667 F.2d at 965 & n. 15. The court concluded that a post-suspension hearing was available under state law in which the propriety and necessity of their temporary dispossession could be challenged by the plaintiffs. *Id.* The plaintiffs have not demonstrated why this should be considered in applying the qualified immunity doctrine to the Third Amendment claim. The fact remains that at the time the defendants acted, the Third Amendment law was not "clearly established," and under *Fitzgerald,* the conduct of defendants could not be said to have violated "clearly established statutory or constitutional rights of which a reasonable person would have known," 102 S.Ct. at 2738.