Frank A. LOSCH

v.

**BOROUGH OF PARKESBURG,
PENNSYLVANIA, et al.**

Civ. A. No. 81–0185.

United States District Court,
E.D. Pennsylvania.

June 24, 1983.

Justin J. McCarthy, Wusinich & McCarthy, West Chester, Pa., for plaintiff.

John Churchman Smith, Gibbons, Buckley, Smith, Palmer & Proud, Media, Pa., for defendants.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Plaintiff, Frank A. Losch, brings this civil rights action against the defendants, Borough of Parkesburg, Lester J. Thomas, Chief of Police, and Andrew H. Wilson, III,

a former police officer. Plaintiff asserts this court's jurisdiction pursuant to 28 U.S.C. § 1343(3) and (4), 42 U.S.C. § 1983, and the First, Fourth and Fourteenth Amendments of the United States Constitution. Plaintiff also asserts a pendent state claim for malicious prosecution. Presently before the court is a motion for summary judgment filed on behalf of all defendants. For the reasons stated below, this motion is granted.

On a motion for summary judgment the moving party has the burden of demonstrating that there is no genuine issue of material fact. *Ettinger v. Johnson,* 556 F.2d 692 (3d Cir.1977). The court must view the evidence in a light most favorable to the party opposing the motion. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566 (3d Cir.1976). The defendants have established that the pleadings, discovery depositions, answers to interrogatories, and affidavits fail to raise a genuine issue as to any material fact.

On July 19, 1980, the plaintiff wrote a handwritten message addressed to defendant Officer Andrew Wilson which he caused his son to affix to the front door of the Parkesburg Police Department:

Officer Wilson, I strongly advise you to stop picking on my wife and children and accepting information which is not true. I have intentions of taking this matter before the County District Attorney's Office and having you arrested for a number of offenses. Respectfully yours, Frank A. Losch.

At that time charges of disorderly conduct were pending against plaintiff's wife and charges of burglary and theft were pending against the plaintiff's juvenile son. Officer Wilson discussed whether the writing of such a letter constituted a crime with District Justice Carl Henry who reviewed the facts and recommended the filing of charges for Harassment by Communication or Address, 18 Pa.C.S.A. § 5504(a)(1),[1] and

---

1. Title 18 Pa.C.S.A. § 5504(a) provides:
§ 5504. Harassment by communication or address

(a) Offense defined.—A person commits a misdemeanor of the third degree if, with intent to harass another, he:

Threats and Other Improper Influences in Official and Political Matters, 18 Pa.C.S.A. § 4702(a)(1).[2] Officer Wilson and Chief Thomas then reviewed the charges and prepared a criminal complaint; Chief Thomas signed the affidavit. The District Justice issued a summons for the plaintiff on July 23, 1980; plaintiff was charged with violations of 18 Pa.C.S.A. § 5504 and 18 Pa.C.S.A. § 4702. At plaintiff's arraignment, nominal bail was set at one dollar. No restrictions were placed on plaintiff's activities except that he was required to telephone a bail agency once a week.

At the hearing held before District Justice John Catanese on August 27, 1980, the Assistant District Attorney moved to withdraw the charges against the plaintiff for insufficiency of evidence. But at the request of plaintiff's counsel the District Justice dismissed both charges against plaintiff. Mr. Losch alleges defendants lacked probable cause in bringing the criminal charges against him and were motivated by malice and bad faith. Plaintiff points to three incidents involving his wife and two sons in support of his contention:

The first incident involved plaintiff's son, Bruce Losch. On November 17, 1979, Officer Wilson issued several traffic and non-traffic citations to Bruce Losch based on the officer's personal observation. At the hearing on these charges on December 7, 1979, Officer Wilson failed to appear (or appeared late according to the defendant) and the District Justice dismissed the charges. Plaintiff alleges that Officer Wilson was suspended for three days for this failure to appear and that Officer Wilson's

criminal charges against plaintiff were in retaliation for his suspension. Officer Wilson was suspended for three days after failure to appear without prior notice at a hearing on January 11, 1980, concerning a matter unrelated to the plaintiff or his family. His notice of suspension referred to six hearings missed in 1979; one of these was the Losch hearing.

The second incident involved another of the plaintiff's sons, Drew Losch. On March 20, 1980, Officer Wilson referred Drew Losch to juvenile authorities when another juvenile defendant implicated him in an incident concerning the burglary and theft of motorcycles from the property of two Parkesburg residences. A juvenile petition issued charging Drew Losch and two other juveniles with theft and burglary. The juvenile who incriminated Drew Losch pled guilty himself but refused to testify against plaintiff's son and the charges against Drew Losch were dismissed for lack of evidence.

The third incident involved plaintiff's wife. On July 8, 1980, Officer Wilson filed a charge of disorderly conduct against Dorothy Losch on the complaint of a neighbor. District Justice Carl Henry issued a summons when Mrs. Losch failed to appear at her scheduled hearing; plaintiff paid the fines and costs on behalf of his wife on August 20, 1980.

## I. Claims Against the Borough of Parkesburg

■ Municipalities can be sued directly under 42 U.S.C. § 1983 for monetary, declaratory, or injunctive relief. But a mu-

---

(1) makes a telephone call without intent of legitimate communication or addresses to or about such other person any lewd, lascivious or indecent words or language or anonymously telephones another person repeatedly; or
(2) makes repeated communications anonymously or at extremely inconvenient hours, or in offensively coarse language.

**2.** Title 18 Pa.C.S.A. § 4702(a) provides:
§ 4702. Threats and other improper influence in official and political matters
 (a) Offenses defined.—A person commits an offense if he:

(1) threatens unlawful harm to any person with intent to influence his decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter;
(2) threatens unlawful harm to any public servant with intent to influence his decision, opinion, recommendation, vote or other exercise of discretion in a judicial or administrative proceeding; or
(3) threatens unlawful harm to any public servant or party official with intent to influence him to violate his known legal duty.

nicipality cannot be held liable on a respondeat superior theory.

> ... a local government may not be sued under 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under 1983.

*Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2038, 56 L.Ed.2d 611, 638 (1978). *Monell* requires that in order to hold a municipality liable for constitutional torts, the allegedly unconstitutional acts must implement a policy, ordinance, or custom of the local government or have been committed by an official high enough in the government so that his or her actions can be said to represent a governmental decision.

 The complaint against the Borough of Parkesburg does not show any facts that can be interpreted to constitute a policy, decision, regulation or custom on the part of the Borough with respect to its dealings with the plaintiff. Mr. Losch alleges that the Mayor of Parkesburg abdicated control of the police department to Chief Thomas and the criminal charges brought by Chief Thomas and Officer Wilson were a conspiracy to harass him. Therefore, plaintiff asserts that the Borough is liable under respondeat superior for this conspiracy to subject an innocent person to an illegal arrest. But even if liability were established against Chief Thomas and Officer Wilson, there is nothing alleged to show that the Mayor or Borough Council had any knowledge of the actions taken against the plaintiff or acquiesced or participated in depriving the plaintiff of his constitutional rights. There is no liability under § 1983 by reason of the traditional respondeat superior doctrine. *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077 (3d Cir.1976).

Plaintiff also asserts that the defendant Borough is liable for its alleged policy of hiring inexperienced and untrained individuals as police officers and for negligence in the training and supervision of police officers. These allegations are unsupported by facts sufficient to sustain a civil rights claim under § 1983. Both Chief Thomas and Officer Wilson were trained and experienced police officials. Defendant Lester Thomas had eleven years' experience in law enforcement, seven years of which he was Chief of the Atglen, Pennsylvania Police Department. Defendant Andrew Wilson had one year's experience with the Chester County Sheriff's Department before being employed by the Parkesburg Police Department in March, 1979. It has been stipulated that Officer Wilson received his police certification under the Municipal Police Officers Educational and Training Commission, 53 Pa.S.A. § 740, prior to filing the charges against plaintiff.

Even if defendants were inexperienced or untrained, there is no basis for the requisite finding that this was the cause of the conduct of which plaintiff complains. The Supreme Court has stated that there must be an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners—express or otherwise—showing their authorization or approval of such misconduct." *Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561, 569 (1976). The allegation in the plaintiff's complaint of Borough responsibility is nothing more than conclusory, and therefore the § 1983 claim against it must be dismissed.

II. *Section 1983 Claim Against Chief Thomas and Officer Wilson*

 Plaintiff alleges a deprivation of his rights by defendant police officials, Chief Thomas and Officer Wilson. To state a claim under § 1983, a plaintiff must demonstrate a "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368, 1383 (1941). These defendant police officials were acting under the color of state law in charging the plain-

tiff with two criminal offenses. As police officials of the Borough of Parkesburg, they had authority to bring criminal charges so long as they acted with a good faith belief that probable cause existed to support the charges. Probable cause exists where the facts and circumstances within the officers' knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a reasonable belief that an offense has been or is being committed. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

█ Police officials acting under the color of state law are government officials who perform discretionary functions and are therefore entitled to qualified immunity. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Officials performing discretionary functions are gen-

erally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[3] Since qualified immunity is an affirmative defense, the official has the burden of claiming his conduct was justified by an objectively reasonable belief that it was lawful. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572, 578 (1980).[4] *Harlow* mandates reliance on the objective reasonableness of an official's conduct as measured by reference to clearly established law.[5] Therefore, the court must consider the law applicable at the time of these events and whether that law was clearly established at the time the events complained of occurred.

█ Plaintiff asserts that defendants did not act without malice because no possible

---

**3.** Prior to *Harlow, supra,* the applicable test focused not only on whether the official had an objectively reasonable basis for that belief but also on whether the official himself was acting sincerely and with a belief that he was doing right. *Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). The official's subjective good faith was considered a question of fact inherently requiring resolution by jury rather than by motions for summary judgment under Fed.R.Civ.P. 56. But in *Harlow,* the Supreme Court adjusted the "good faith" standard to permit dismissal of unsubstantial claims by stating an "objective" test for good faith involving a presumptive knowledge and respect for basic, unquestioned constitutional rights. Reliance on the objective reasonableness of an official's conduct by reference to clearly established law is permitted in order to resolve unsubstantial claims on summary judgment without the necessity of trial. 102 S.Ct. at 2737, 73 L.Ed.2d at 410.

**4.** As quoted in *Wood v. Strickland,* 420 U.S. 308, 318, 95 S.Ct. 992, 999, 43 L.Ed.2d at 222, 223:

In *Pierson v. Ray,* 386 US 547, 554, 18 L Ed 2d 288, 87 S Ct 1213 (1967), . . . we concluded that the common-law doctrine of absolute judicial immunity survived. Similarly, § 1983 did not preclude application of the traditional rule that a policeman, making an arrest in good faith and with probable cause, is not liable for damages, although the person arrested proves innocent. Consequently the Court said: "Although the matter is not entirely free from doubt, the same considera-

tion would seem to require excusing him from liability for acting under a statute that he reasonably believed to be valid but that was later held unconstitutional, on its face or as applied." Id., at 555 [87 S.Ct. at 1218], 18 L Ed 2d 288 (footnote omitted).

\* \* \* \* \* \*

"[I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct." *Scheuer v. Rhodes,* 416 US 232, 247–248, 40 L Ed 2d 90, 94 S Ct 1683 [1691–92] (1974).

**5.** "This case involves no issue concerning the elements of the immunity available to state officials sued for constitutional violations under § 1983. We have found previously, however, that 'it would be untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials.' *Butz v. Economou,* 438 US [478] at 504, 57 L Ed 2d 895, 98 S Ct 2894 [2902]." *Harlow, supra,* 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410, n. 30.

interpretation of his letter to Officer Wilson could have sustained charges under either 18 Pa.C.S.A. § 5504 or 18 Pa.C.S.A. § 4702. Plaintiff contends that 18 Pa.C.S.A. § 5504 applies to oral not written communications and even if applicable to written communications, his written letter was neither lewd, lascivious nor indecent. The type of communication, address or language that would fall within the scope of 18 Pa.C.S.A. § 5504 (Harassment by Communication or Address) has not yet been established by case law. The fact that the Assistant District Attorney moved to withdraw the charges at the final hearing does not of itself establish malice.[6] "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to know that the law forbade conduct not previously identified as unlawful." *Harlow, supra* at —— U.S. ——, 102 S.Ct. 2739, 73 L.Ed.2d at 411.

Title 18 Pa.C.S.A. § 4702 (Threats and Other Improper Influences in Official and Political Matters) may have been violated by the plaintiff's letter. With a disorderly conduct charge pending against the plaintiff's wife and juvenile charges pending against plaintiff's son, a police officer in Officer Wilson's circumstances might reasonably have believed that posting the letter constituted a criminal offense. There are of record affidavits from an Assistant District Attorney, the District Magistrate who issued process, and a criminal justice expert, stating their belief that the plaintiff's letter was sufficient to support the charge under 18 Pa.C.S.A. § 4702(a)(1). Police officers are not trained lawyers capable of making final legal interpretations of criminal statutes before filing a criminal complaint.[7] This is especially true when

the statute or law in question remains to be clearly defined by the courts.

The official's good-faith belief may be based on state or local law, advice of counsel, administrative practice or some other factor. *Gomez v. Toledo,* 446 U.S. 635, 641, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572, 578 (1980). Officer Wilson's consultations with his Chief of Police and their mutual discussion of the charges with the District Justice to see if their action was justified support the objective reasonableness of the defendants' actions. When the plaintiff complained to the Chester County District Attorney's Office about the charges against him, there was also an investigation of the Parkesburg Police Department by Detective Michael Carroll of the Chester Police Department who found no evidence of wrongdoing in charging the plaintiff with two criminal offenses. The Assistant District Attorney who ultimately moved to withdraw the charges against the plaintiff has filed an affidavit stating his belief that the officers had been acting in good faith.

To contravene this showing of good faith, plaintiff has made an unsubstantial showing of any evidence warranting a reasonable finding that defendants were motivated by bad faith and malice by reason of prior contact with plaintiff or his family. The record does show previous Parkesburg Police contact with the Losch family, particularly with regard to reciprocal complaints by Mrs. Losch and her neighbors. Plaintiff, separated from his wife and living in Wilmington, Delaware, frequently wrote letters to the Mayor, Police Chief, Chester County District Attorney's Office and the local press, complaining about the behavior of the Parkesburg Police, in particular Officer Wilson. Plaintiff accused the police of

---

**6.** If the prosecutor finds that the defendant had not used lewd, lascivious or indecent words or language and that the communication was too trivial to warrant a conviction, the charge should be dismissed. *Commonwealth v. Houck,* 233 Pa.Super. 512, 335 A.2d 389 (1975).

**7.** "Police officers can be expected to have a modicum of knowledge regarding the fundamental rights of citizens.... If we are to measure official action against an objective

standard, it must be a standard which speaks to what a reasonable officer should or should not know about the law he is enforcing and the methodology of effecting its enforcement.... ... they cannot be held to a title-searcher's knowledge of metes and bounds or a legal scholar's expertise in constitutional law." *Saldana v. Garza,* 684 F.2d 1159, 1165 (5th Cir. 1982).

using "Gestapo techniques" and harassing his family. However, each of the three incidents cited by the plaintiff in support of his claimed malice were actions taken by Officer Wilson based on probable cause.

The incident involving his wife resulted in a fine and costs paid by the plaintiff on her behalf. The incident involving his son, Drew, resulted in dismissal of the charges for lack of evidence but the juvenile witness, who by implicating him occasioned the charges, later refused to testify against Drew. These matters were pending when plaintiff wrote his letter taped to the door of the Parkesburg police station on July 19, 1980; this establishes bad faith or malicious intent of the plaintiff not of the police.

The incident involving plaintiff's son, Bruce, resulted in his discharge when Officer Wilson failed to appear against him on December 7, 1979. This alone would, if anything, negate malice toward the Losch family by Officer Wilson. However, plaintiff claims Officer Wilson was suspended for three days as a result of this failure of the officer to appear and that these criminal charges were initiated in retaliation. But plaintiff has admitted that Officer Wilson's three-day suspension pursuant to the Mayor's Directive dated January 22, 1980, was for his failure to appear at another hearing scheduled for January 11, 1980, concerning a matter unrelated to plaintiff or his family as well as six other hearings in 1979. (Plaintiff's Admission # 10, Docket No. 39, filed March 15, 1982). One of the six prior hearings was that scheduled for Bruce Losch on December 7, 1979 for charges relating to reckless driving; see, letter of District Justice Carl Henry to Chief Thomas, dated December 7, 1979, Exhibit I to Plaintiff's Answer, Docket No. 27, filed January 18, 1982.[8] But even if Officer Wilson's suspension following the hearing of January 11, 1980 was for cumulative failures to appear, the relationship to plaintiff is too attenuated to support a finding of malicious action, especially where plaintiff's own conduct in posting a written communication on the front door of the police station the following July precipitated the charges complained of here.

Thus, there are no material facts in dispute and no evidence on which a jury might reasonably find the officers acted maliciously or in bad faith. The officers took the advice they received at each step in the law enforcement process in order to comply with the law and avoid violating the constitutional rights of the plaintiff. Therefore, under the standards applicable to § 1983 actions, defendants are entitled to summary judgment in their favor.

### III. Pendent State Claims for Malicious Prosecution

 With the § 1983 federal claims against all defendants decided adversely to plaintiff, the court in the exercise of its discretion declines to exercise pendent jurisdiction. See, United Mine Workers v. Gibbs, 382 U.S. 809, 86 S.Ct. 59, 15 L.Ed.2d 58 (1965). If the federal count is subject to

8. But cf., Affidavit Supporting Motion for Summary Judgment of Mayor William E. Wilson, Jr., dated April 26, 1982, ¶ 3(i), (j), (k), and (l) (Docket No. 51, filed May 3, 1982):

i. That Officer Andrew H. Wilson was not suspended for three days without pay for failure to appear on December 7, 1979 for a District Justice hearing on six citations issued to the Plaintiff's son, Bruce Losch. j. That upon becoming Mayor of the Borough of Parkesburg in January of 1980, I issued verbal instructions followed by a written directive dated January 15, 1980 issued to Chief of Police Lester Thomas informing him that the next Police Officer who missed a scheduled hearing and failed to give a reasonable excuse would be suspended for three days without pay. Exhibit FF.

k. That Officer Andrew Wilson was the first member of the Police Force to miss a hearing following my instructions to Chief Thomas that the next officer to have missed a hearing would be suspended for three days without pay and I therefore issued instructions on January 22, 1980 to Chief Thomas that Officer Andrew Wilson was to be suspended for three days without pay for having missed a scheduled hearing on January 11, 1980. Exhibit GG. l. That Officer Andrew Wilson was not suspended for his failure to attend a District Justice hearing on motor vehicle violations by Bruce Losch scheduled on December 7, 1979. I know that Officer Wilson had missed at least six hearings in 1979, but he was not suspended for missing any of those hearings.

dismissal on a motion for summary judgment, then the district court should "ordinarily refrain from exercising jurisdiction over the state law claims in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 196 (3d Cir.1976). Therefore, the count for malicious prosecution is transferred to the Court of Common Pleas of Chester County, Pennsylvania to avoid any statute of limitations bar not otherwise applicable. *Weaver v. Marine Bank,* 683 F.2d 744 (3d Cir.1982).