**Inman L. JONES, Jr.**

v.

**Officer David A. WATERS and Detective Donald Butler.**

**Civ. A. No. 82-0234.**

United States District Court,
E.D. Pennsylvania.

Sept. 13, 1983.

Fredrick C. Hanselmann, German, Gallagher & Murtagh, Philadelphia, Pa., for plaintiff.

Linda S. Sonnenberg, Asst. City Sol., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, Chief Judge.

In this civil rights action under 42 U.S.C. § 1983, Inman L. Jones, Jr. seeks damages for alleged violations of his constitutional rights. Jones claims that his rights were violated when he was arrested by Officer David A. Waters of the Philadelphia Police Department on January 17, 1980 in connection with a sexual assault. Thereafter, he was tried and convicted of rape and criminal conspiracy and is now serving a prison term of six to twenty years.

As described in an earlier opinion in this case, 563 F.Supp. 817 (E.D.Pa.1983), Jones alleges that Officer Waters violated his constitutional rights by "entering and searching the plaintiff's residence without a warrant or without the permission of the owner of the house; by seizing plaintiff's person without a warrant, without his permission or without probable cause to believe that he committed a crime; and by damaging plaintiff's personal property (an air hockey set) in the course of the said events." (Complaint ¶ 11.) The Complaint also alleges that Detective Donald Butler violated Jones' constitutional rights by handcuffing him to a chair in an escape-proof room without adequate ventilation, and by detaining and questioning him for several hours without probable cause and without formally charging him with a specific crime. Defendants Waters and Butler have filed a motion for summary judgment with supporting affidavits. For the reasons discussed below, I will grant their motion.

■ In this suit, plaintiff claims that Officer Waters lacked probable cause to arrest him, or, in the alternative, that Waters should have obtained an arrest warrant prior to his entry into Jones' apartment. Under § 1983, Jones must prove that Waters, under color of state law, arrested him without probable cause, or without a warrant and without justification for not obtaining one. *See Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).[1] On the record before me these claims are unsupportable.

---

1. Defendants Waters and Butler argue that Jones' claims are precluded by Jones' earlier conviction on criminal charges. As applied to the issues in this case, however, defenses of *res judicata* and collateral estoppel are unavailing. Although these defenses are generally available in civil actions under § 1983, *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), preclusion is appropriate only if the criminal conviction would bar a subsequent challenge to the officers' conduct under applicable state law, *Haring v. Prosise,* —— U.S.

Primarily, uncontroverted affidavits submitted by Officer Waters and the victim of Jones' crime clearly establish sufficient facts from which a reasonable person would infer that Jones had committed the offense. In his affidavit, Officer Waters stated that he received a radio call at approximately 4:10 a.m. on January 17, 1980 directing him to go to a certain address in Philadelphia. When Officer Waters arrived on the scene, a woman was sitting outside the house and crying. The woman told Officer Waters that while she was waiting for a trolley at 49th Street and Woodland Avenue she was forced into a yellow automobile, taken to the basement of a house in the vicinity, and raped by four males.

The officer then calmed down the assault victim and asked her where the incident had taken place. Although the victim could not provide the specific address of the place where she was attacked, she accompanied Officer Waters in a search of the area in his patrol car. During that search, the victim recognized a house with a metal gate as the site of the attack. She told the officer that her assailants had taken her down some steps and through a basement door into the house. At that point the victim and Officer Waters approached the house, looked through the cellar window, and saw two men. The victim positively identified the men as participants in the crime, stating that she was "sure" of their identity. Officer Waters then entered the dwelling and placed two men (Jones and Robert Womak) under arrest.

In his affidavit, Officer Waters also stated that when he entered the dwelling, he was concerned that the men identified by the victim might try to escape or to destroy evidence. Further, he stated that he neither saw an air hockey set on the premises nor touched any other personal property belonging to Jones.

An affidavit submitted by the victim of the crime corroborated Officer Waters' statements concerning his investigation of the incident and apprehension of Jones and Womak. The victim stated that, while at the scene of the crime, she did not see the air hockey set alleged to have been damaged by Officer Waters, and that the officer transported her to Presbyterian Hospital immediately after the arrest.

■ On the basis of the undisputed affidavits of Officer Waters and the victim, it is clear that there was probable cause for Waters to believe that a rape had been committed on January 17, 1980, and that Jones was a participant therein. To establish probable cause for an arrest, it is, of course, necessary for the arresting officer to be aware of "facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975), *quoting, Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). *See also United States ex rel. Wright v. Cuyler,* 563 F.2d 627 (3d Cir. 1977). When confronted with a victim's positive identification of her assailant short-

---

——, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), or if principles of federal jurisprudence would prevent the relitigation of certain issues.

Under Pennsylvania law, it does not appear that Jones' criminal conviction bars his suit. The defense of *res judicata* requires an identity of parties and claims, factors obviously lacking here. *Duquesne Slag Products Co. v. Lench,* 490 Pa. 102, 415 A.2d 53 (1980). *See generally Davis v. United States Steel Co.,* 688 F.2d 166 (3d Cir.1982) (*en banc*), *cert. denied,* —— U.S. ——, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). Collateral estoppel is also not a bar to this suit because, on the record now before the court, the constitutionality of Jones' arrest does not appear to have been actually litigated, and it was not essential to his criminal conviction.

*Cf. Schubach v. Silver,* 461 Pa. 366, 336 A.2d 328 (1975) (adopting Restatement, Judgments § 68).

Under principles of federal law, preclusion is appropriate if the issue sought to be litigated was actually decided in the prior adjudication or where resolution of the issue was essential to the antecedent criminal conviction. *Kauffman v. Moss,* 420 F.2d 1270, 1274 (3d Cir.) *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Nash v. Reedel,* 86 F.R.D. 13, 15 (E.D. Pa.1980). Defendants have not argued, nor have they produced evidence that the constitutionality of Jones' arrest and detention was actually decided in the criminal trial. Jones is therefore not estopped from pressing his claims here.

ly after completion of the attack, corroborated as it was by the victim's recognition of the house to which she had been taken, Officer Waters clearly had been made aware of facts and circumstances sufficient to establish probable cause for Jones' arrest. *Dennis v. City of Philadelphia,* CA No. 82–2156 (E.D.Pa.1983). Moreover, because the person from whom Waters received his information was the victim of the crime, he was justified in placing reliance in the truthfulness of her statements. *See United States v. Anderson,* 533 F.2d 1210, 1213 (D.C.Cir.1976).

██ I am aware that the question of probable cause in § 1983 actions is ordinarily one for the jury. *Patzig v. O'Neil,* 577 F.2d 841, 848 (3d Cir.1978). However, the undisputed affidavits before me establish probable cause so clearly that no reasonable jury could conclude otherwise, and summary judgment is appropriate. *Cf. Patzig,* 577 F.2d at 848–849.

Jones next claims that Officer Waters violated his constitutional rights by failing to obtain an arrest warrant prior to his entry into Jones' apartment. Under the Supreme Court's decision in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Fourth Amendment requires that a warrant be obtained in order to arrest a person in his or her home. In *Payton,* the Supreme Court ruled inadmissible evidence secured pursuant to a warrantless arrest in a suspect's home. The police in *Payton* compiled sufficient evidence to charge the defendant with murder after two days of investigation. After the defendant's murder conviction was sustained by the New York Court of Appeals, the Supreme Court ruled that the Fourth Amendment requires police to obtain a warrant prior to arresting an individual in his or her home, and therefore excluded evidence gained in the search pursuant to Payton's arrest. The *Payton* Court noted, however, that the warrant requirement does not

apply if an arrest is made under "exigent circumstances." *Id.* at 590, 100 S.Ct. 1371, 63 L.Ed.2d 639.

██ In the present case, Jones contends that no exigent circumstances obviated the need for a warrant for his arrest because he possessed no weapons or evidence that could be disposed of quickly, and because it was not likely for him to attempt escape.[2] That argument, however, overlooks several critical facts concerning the circumstances of the arrest. Primarily, from the affidavits of Officer Waters and the victim, there was evidence that two of the participants in the attack had already taken flight when Officer Waters returned with the victim to the scene of the crime. Because neither the officer nor the victim knew if the premises in which the crime was committed was the residence of any of the suspects, the officer was justified in assuming that there was a likelihood that Jones and his companion would also escape before Waters could summon additional officers to guard other exits from the building. Furthermore, although this is not a case involving readily disposable evidence such as drugs, Jones could have concealed or destroyed crucial elements of proof (*e.g.,* items of wearing apparel) if Waters had sought a warrant. The law does not require police officers to forego arresting a suspect in his personal residence "when their attempt to secure a warrant might delay them sufficiently to cause the criminal to get away or destroy the fruits or evidence of his crime." *United States v. Davis,* 461 F.2d 1026, 1030 (3d Cir.1972) (citations omitted). *See also United States v. Rubin,* 474 F.2d 262 (3d Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973).

██ The present case is thus distinguishable from *Payton v. New York, supra.* Officer Waters did not have several days to compile evidence against Jones and to re-

---

**2.** In analyzing Jones' claim that his constitutional rights were violated because he was arrested in his home without a warrant, and without exigent circumstances, I have considered that the Third Circuit Court of Appeals' deci-

sion in *Patzig v. O'Neil,* 577 F.2d 841, 848 (3d Cir.1978), appears to require a jury determination of issues such as the existence of exigent circumstances unless summary judgment is appropriate.

pair to a neutral magistrate for a warrant. His pursuit of the victim's assailants led immediately to discovery of two suspects who were likely to flee if apprised of Waters' presence. Moreover, as the defendants note in their briefs, Officer Waters was engaged in "hot pursuit" at the time of Jones' arrest. *See Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Although this is not a "true 'hot pursuit'" case because both Jones and Womak had come to an at least temporary stop when they arrived at Jones' residence after abducting the victim, *cf. United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–2410, 49 L.Ed.2d 300 (1976), it is not necessary under cases defining "hot pursuit" that each defendant be in flight in order to sustain warrantless arrests of persons in their homes by pursuing police officers. *See, e.g., United States v. Stubblefield,* 621 F.2d 980, 982 (9th Cir.1980) (arrest sustained where officers arrested three bank robbery suspects outside premises, then entered house to arrest fourth). More importantly, however, even if I were to conclude that the absence of a warrant was not excused by exigent circumstances, summary judgment would be appropriate. Officer Waters is entitled to immunity for his actions under § 1983 unless his conduct violated "clearly established law" defining Jones' constitutional rights. *Harlow v.*

*Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982).[3] On the record now before me, which as noted above consists largely of the uncontroverted affidavits of Officer Waters and the victim, a reasonable jury could not find that the officer violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Although the general requirement that warrants be obtained before an arrest is carried out in a defendant's residence is clearly established, *see Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), it is not at all clear that a reasonable person would know that a warrant was needed under the circumstances confronting Officer Waters. Indeed, I have determined that no warrant was required under these circumstances. Summary judgment is therefore appropriate.

In reaching this determination, I have assumed *arguendo* that a reasonable jury could reach a different conclusion with respect to the question whether exigent circumstances attended Jones' arrest. But summary judgment is nevertheless appropriate here because a reasonable jury would *not* be entitled to conclude that Officer Waters violated the *clearly established* constitutional rights of the plaintiff.[4] As the

3. Officer Waters has raised his good faith as an affirmative defense of this suit as is required to establish § 1983 immunity. (Def. Answer, Eight Def., Twenty Second Def.) *See Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

4. It is not entirely clear after the Supreme Court's *Harlow v. Fitzgerald* decision how "clearly established law" should be defined. *See Hixon v. Durbin,* 560 F.Supp. 654, 664–65 (E.D.Pa.1983). At least one court appears to hold that "clearly established law" should be defined as broadly as, for example, the Fourth Amendment's proscription of arrests without probable cause. *Trejo v. Perez,* 693 F.2d 482, 486–88 (5th Cir.1982). Under this formulation, *any* arrest subsequently determined to be without probable cause, and for the same reasons any warrantless arrest made without exigent circumstances, would appear to subject the arresting officer to automatic § 1983 liability except upon proof of exceptional circumstances.

Other decisions seem to reject this *per se* approach, and define "clearly established law" in terms of what a reasonable police officer, under the facts and circumstances presented to him or her, knew or ought to have known concerning the suspect's constitutional rights. *See, e.g., Saldana v. Garza,* 684 F.2d 1159, 1164–66 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983); *Smith v. Heath,* 691 F.2d 220, 225–26 (6th Cir. 1982) (affirming finding of § 1983 violation); *Losch v. Borough of Parkesburg,* 566 F.Supp. 282 (E.D.Pa.1983).

I adopt the latter approach. The Supreme Court itself noted in *Harlow v. Fitzgerald,* that it has not been asserted that § 1983 imposes " 'no fault' tort liability." 457 U.S. at 818 n. 31, 102 S.Ct. at 2739 at n. 31. Moreover, the Court adjusted the standard for § 1983 immunity in *Harlow* for the purpose of preventing insubstantial claims from reaching trial, not for the purpose of increasing the scope of § 1983 liability. 457 U.S. at 818, 102 S.Ct. at 2738. The Court gave no indication that it intended its

Supreme Court noted in *Harlow v. Fitzgerald, supra,* whether the plaintiff's rights were clearly established is to be decided by the court on a motion for summary judgment prior to the commencement of discovery.

 Jones next claims that Officer Waters violated his constitutional rights because Waters intentionally damaged an air hockey set in Jones' apartment. It is not clear initially whether Jones' property damage claim is barred by the Supreme Court's decision in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which held that a state could satisfy a prisoner's property loss claim by providing an adequate post-deprivation remedy. Pennsylvania has enacted a tort claims statute which appears on its face to apply to the claims at bar, and thus to satisfy the mandate of due process. *See* 42 Pa.C.S.A. § 8550. It is unnecessary, however, to reach this question because plaintiff has failed to buttress his opposition to Waters' motion for summary judgment with supporting affidavits. Fed.R.Civ.P. 56(e). Officer Waters' uncontroverted affidavit asserts that he did not see an air hockey set on the premises when he arrested Jones. He could not, therefore, have intentionally destroyed it. The victim's affidavit corroborates Officer Waters' account of his actions. Waters' affidavit thus establishes the absence of a genuine issue of fact, and Jones cannot simply rely upon contrary allegations in his complaint in order to avoid summary judgment. *Adickes v. Kress & Co.,* 398 U.S. 144, 159–160

& n. 20, 90 S.Ct. 1598, 1609–1610 & n. 20, 26 L.Ed.2d 142 (1970); Fed.R.Civ.P. 56(e) advisory committee note.

For similar reasons, I will grant Detective Butler's motion for summary judgment. Butler is alleged to have violated plaintiff's constitutional rights in connection with Jones' detention and interrogation. Detective Butler's affidavit states that his role in Jones' case consisted of applying for and executing a search warrant at Jones' residence later on the morning of the arrest. Again, without filing a supporting affidavit, Jones attempts to rebut this affidavit by stating rather vaguely that Butler was "engaged in an active investigation of the plaintiff." (Def's Answer to Motion for Summary Judgment). This unsworn allegation does not contradict Butler's affidavit, and is insufficient to create a genuine issue of material fact germane to Detective Butler's liability for Jones' detention. Fed.R.Civ.P. 56(e). Therefore defendant Butler's motion is also granted.

---

new objective standard for the immunity defense to preclude inquiry into the objective reasonableness of police officers' conduct under the circumstances presented to them. Indeed, as authority for the revised immunity standard, the Court cited *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), which denied immunity under the "objective" prong of the immunity defense:

... if the constitutional right allegedly infringed by [the defendants] was clearly established at the time of their challenged conduct, if they knew or should have known of that right, *and if they knew or should have known that their conduct violated the constitutional norm.*

434 U.S. at 562, 98 S.Ct. at 860 (emphasis added).

This result also comports with a realistic expectation of police officers' knowledge regarding constitutional law. As the Fifth Circuit Court of Appeals stated in *Saldana v. Garza,* 684 F.2d at 1159:

If we are to measure official action against an objective standard, it must be a standard which speaks to what a reasonable officer should or should not know about the law he is enforcing and the methodology of effecting its enforcement. Certainly we cannot expect our police officers to carry surveying equipment and a Decennial Digest on patrol; they cannot be held to a title-searcher's knowledge of metes and bounds or a legal scholar's expertise in constitutional law.