Frank A. LOSCH, Appellant,

v.

BOROUGH OF PARKESBURG, PENN-SYLVANIA; Lester J. Thomas, individually and as Chief of Police of the Borough of Parkesburg, Pennsylvania, and Andrew H. Wilson, III, individually and as a Patrolman for the Borough of Parkesburg, Pennsylvania.

No. 83–1549.

United States Court of Appeals, Third Circuit.

Argued Feb. 28, 1984.

Decided June 14, 1984.

Justin J. McCarthy (argued), Dennis D. Brogan, Wusinich & McCarthy, West Chester, Pa., for appellant.

John Churchman Smith (argued), Gibbons, Buckley, Smith, Palmer & Proud, P.C., Media, Pa., for appellees.

Before ADAMS and SLOVITER, Circuit Judges, and TEITELBAUM, District Judge[*].

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This is an appeal from a grant of summary judgment for the defendants in an action brought under 42 U.S.C. § 1983. The appellant claims that defendants violated his First, Fourth and Fourteenth Amendment rights by initiating criminal prosecution against him maliciously and without probable cause. The district court found that there was no genuine issue of fact regarding the defendants' motivation and that the individual defendants were entitled to qualified immunity. We affirm as to the Borough and reverse as to the individual defendants.

### I.

### Facts and Procedural History

The prosecution that forms the basis for this suit charged appellant Frank A. Losch with harassing and threatening a police officer by means of a note that Losch addressed to Officer Andrew H. Wilson, III, of the Parkesburg, Pennsylvania, police department. That note was taped to the front door of the Borough police station on July 19, 1980 at appellant's request by one of his sons. The note said:

Officer Wilson, I strongly advise you to stop picking on my wife and children and accepting information which is not true. I have intentions of taking this matter before the County District Attorney's Office and having you arrested for a number of offenses. Respectfully yours, Frank A. Losch.

The note was predicated on three earlier contacts between Wilson and members of the Losch family. In the first, in November 1979, Officer Wilson issued six citations to Losch's son Bruce. The citations, most of them for traffic violations, were dismissed when Wilson failed to appear in time for the hearing. Shortly afterward, Wilson, who had missed other hearings in the past year, was suspended by the Mayor for three days without pay. Several months later, Drew Losch, another of Frank Losch's sons, was charged with the burglary of two Parkesburg residences and the theft of motorcycles and a go-kart. Officer Wilson investigated the case and referred it to the County juvenile authorities. In the third incident, Wilson issued a citation for disorderly conduct against Losch's wife, Dorothy, after a neighbor complained that Mrs. Losch had used obscene language and a racial epithet. When Frank Losch wrote the note to Wilson, charges were still pending against his wife and his son Drew. Several weeks later, Losch paid his wife's fine; the charges against Drew were dropped when the youth who had implicated him, and who pleaded guilty to charges of juvenile delinquency, refused to testify against him.

Upon receiving Losch's note, Wilson consulted Pennsylvania District Justice Carl Henry, and thereafter drafted charges that Losch violated two Pennsylvania statutes by writing the note. These provide, in relevant part:

§ 5504. Harassment by communication or address

(a) Offense defined—A person commits a misdemeanor of the third degree, if, with intent to harass another, he:

(1) makes a telephone call without intent of legitimate communication or addresses to or about such other person any lewd, lascivious or indecent words or language or anonymously telephones another person repeatedly....

18 Pa.C.S.A. § 5504(a)(1) (Purdon 1983).

§ 4702. Threats and other improper influence in official and political matters

(a) Offenses defined—A person commits an offense if he:

---

[*] Hon. Hubert I. Teitelbaum, Chief Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

(1) threatens unlawful harm to any person with intent to influence his decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter....

18 Pa.C.S.A. § 4702(a)(1) (Purdon 1983).

The Police Chief, Lester J. Thomas, conferred with Wilson and Henry, and then signed a complaint charging Losch under both statutes. At Losch's arraignment before District Justice Henry, bail was set at $1.00 and Losch was ordered to report his whereabouts to the bail agency once a week. At a subsequent hearing before another district justice, the Assistant District Attorney moved to withdraw the charges against Losch for insufficient evidence. Instead the district justice, on the motion of Losch's attorney, dismissed the charges.

Losch then filed this § 1983 action against the Borough of Parkesburg, Police Chief Thomas and Officer Wilson claiming that they prosecuted him maliciously and without probable cause. The complaint alleged that Thomas and Wilson prosecuted Losch in retaliation for Wilson's suspension and in "an attempt to suppress and to abridge Plaintiff's right to make reasonable comment concerning the manner in which public officials discharged their public duties ...." The complaint also included a pendent state claim for malicious prosecution.

The district court held that the Borough could not be liable on a respondeat superior theory, observing that local governments may be sued under § 1983 only for acts implementing an official policy or custom. *Losch v. Borough of Parkesburg*, 566 F.Supp. 282, 285 (E.D.Pa.1983). The district court also rejected Losch's claim that the Borough was negligent in hiring and supervision. *Id.* As to the individual defendants, the district court found no evidence to support a finding that they acted in bad faith. *Id.* at 288.

## II.

### Claims Against Individual Defendants

■ In granting summary judgment for the individual defendants, the district court stated that "there are no material facts in dispute and no evidence on which a jury might reasonably find the officers acted maliciously or in bad faith." 566 F.Supp. at 288. When a § 1983 action is based on defendants' misuse of the criminal process by the initiation of criminal charges against plaintiff without probable cause or for personal animosity, as alleged in this case, it is necessary to distinguish between the alleged lack of probable cause or malice underlying the criminal charges as an element of plaintiff's substantive § 1983 claim, and the allegation of malice sufficient to preclude defendants from summary judgment on their qualified immunity defense. The issues are analytically distinct, *see Barker v. Norman*, 651 F.2d 1107, 1123–24 (5th Cir.1981); S. Nahmod, Civil Rights & Civil Liberties Litigation § 3.02, at 64 (1979), although the parties in this case have not always observed the distinction. Since it is also unclear whether the district court found that there were no material fact issues on plaintiffs' substantive § 1983 claim or on defendants' entitlement to the qualified immunity defense, we will consider each issue separately. We turn first to the question of plaintiff's § 1983 claim itself.

Losch contends that the criminal complaint against him was not based upon probable cause but rather that the charges were brought to satisfy Wilson's and Thomas' desire to "get" him for writing the letter and causing them annoyance and embarrassment, in violation of his Fourth and Fourteenth Amendment rights to be free from arrest without probable cause. He further claims that defendants were penalizing him for the exercise of his First Amendment rights.

■ It is clear that the filing of charges without probable cause and for reasons of personal animosity is actionable under § 1983. *Inada v. Sullivan*, 523 F.2d 485, 487–88 (7th Cir.1975); *see also Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir.1978). Similarly, institution of criminal action to

penalize the exercise of one's First Amendment rights is a deprivation cognizable under § 1983. *Wilson v. Thompson*, 593 F.2d 1375, 1377 (5th Cir.1979).

■ Defendants, of course, respond that they had probable cause to institute the criminal charges. The question before us is whether the grant of summary judgment on this issue was appropriate. Resolving all doubts in Losch's favor, we must decide whether, on the probable cause issue, there was before the district court "no genuine issue as to any material fact." Fed.R. Civ.P. 56(c); *see, e.g., Ettinger v. Johnson*, 556 F.2d 692, 696–97 (3d Cir.1977). Any credible evidence contrary to the moving party's version of events will defeat the summary judgment motion. We must evaluate for some minimal showing of credibility any evidence that the defendants did not have probable cause to charge Losch under the two Pennsylvania statutes.

■ Appellant contends that an examination of the statutory provisions and their interpretation in Pennsylvania could lead no reasonable police officer to conclude they were applicable to Losch. We cannot view this contention as without substance. The statutory offense of "Harassment by communication or address" applies to a person who, "with intent to harass another ... addresses to or about such other person any lewd, lascivious or indecent words or language or anonymously telephones another person repeatedly ...." 18 Pa.C. S.A. § 5504(a)(1). The only language conceivably relevant to the note written by Losch is the prohibition against addressing "indecent words" to another—a prohibition that at least one expert witness said could not reasonably apply to Losch's message. Indeed, the Pennsylvania Superior Court, in

construing this statute, has said, "We should be extremely reluctant to infer a criminal intent to harass solely from the filing of complaints with appropriate government agencies and the making of telephone calls during regular office hours lest we impermissibly chill a citizen's constitutional freedoms." *Commonwealth v. Bender*, 248 Pa.Super. 504, 513, 375 A.2d 354, 359 (1977). The other offense charged against Losch, "Threats and other improper influence in official and political matters," is by its express terms limited to a threat of "unlawful harm" to a person acting as a public official. 18 Pa.C.S.A. § 4702(a)(1). A jury might be warranted in concluding that no reasonable officer would have construed Losch's "threat" to complain to the district attorney as a threat of "unlawful harm" within the meaning of this statute.

Furthermore, in his effort to withstand defendants' motion for summary judgment, plaintiff did not rely only on his pleading allegations or on his own subjective interpretation of the events. He submitted statements by several witnesses to support the contention that the defendants had acted in bad faith. Thomas M. Keenan, a former Montgomery County Assistant District Attorney, attested to his belief that the charges were unwarranted and filed maliciously. App. at 656a–661a (Affidavit of Keenan). Dorothy Losch testified that Chief Thomas told her he was "going to get my husband and have him arrested" for writing the letter. App. at 412a (Deposition of Dorothy Losch). The Losches' daughter Dawn recounted a statement by Thomas to her mother that "I am going to get your husband back...." App. at 770a (Deposition of Dawn Losch).[1]

---

**1.** There are other apparent inconsistencies concerning the reason for Wilson's suspension and the extent to which he relied on District Justice Henry's recommendation in drafting the charges. The defendants contend that Wilson was suspended for missing a hearing unrelated to the Losch family and that he had no cause to retaliate against the appellant. Brief for Appellees at 8, 13–15. But the Mayor's suspension order indicated that Wilson was suspended for failure to report to six hearings, including Bruce

Losch's. App. at 599a. The defendants also contend that Justice Henry recommended charging Losch with both Harassment by communication or address and Threats and other improper influence, Brief for Appellees at 3, a claim supported by Henry. App. at 97a. Wilson testified, however, that he only conferred with Henry about the harassment statute, and then drafted the charge of Threats or other

■ The foregoing evidence, which is squarely contradicted by the defendants, raises a credibility issue. While summary judgment may be based on affidavits, conflicts of credibility should not be resolved on a hearing on the motion for summary judgment unless the opponent's evidence is "too incredible to be believed by reasonable minds." 6 J. Moore, Moore's Federal Practice ¶ 56.15(4), at 56–524 (2d ed. 1976); *see generally id.* at 56–512.3–56–530. When there are conflicting statements by witnesses, cross-examination may be determinative. As the Second Circuit stated in one of the seminal summary judgment cases, "we cannot very well overestimate the importance of having the witness examined and cross-examined in presence of the court and jury." *Arnstein v. Porter*, 154 F.2d 464, 470 (2d Cir.1946) (citation omitted). *See also Poller v. CBS*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

■ In cases where substantive liability depends on the reasonableness of the defendants in making a probable cause determination, there is often an issue of credibility. This is particularly true because defendants bear the burden at trial of proving the defense of good faith and probable cause, *see Pierson v. Ray*, 386 U.S. 547, 556–57, 87 S.Ct. 1213, 1218–19, 18 L.Ed.2d 288 (1967), which would ordinarily require their own testimony. Thus, this court stated in *Patzig v. O'Neil* that the reasonableness of defendants' probable-cause determination is for the jury. 577 F.2d at 848. *See also B.C.R. Transport Co. v. Fontaine*, 727 F.2d 7, 10 (1st Cir.1984).

We express no views as to the persuasiveness of Losch's evidence. The district court was not persuaded, but it is the jury and not the court who is the ultimate fact finder. We conclude only that Losch's evidence is not incredible and should have survived a motion for summary judgment unless the defendants were entitled to prevail on some other basis.

improper influence of his own accord. App. at

## III.

### *Qualified Immunity*

■ The individual defendants have invoked the defense of qualified immunity, under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). While the defendant has the burden of pleading and proving qualified immunity, *id.* at 815, 102 S.Ct. at 2737, the objective standard as announced in *Harlow* allows a court to cut short the inquiry into a defendant's state of mind and to grant summary judgment in "insubstantial" claims. *Id.* at 818, 102 S.Ct. at 2738; *Forsyth v. Kleindienst*, 729 F.2d 267, 273 (3d Cir.1984).

■ Qualified immunity protects a defendant who failed to observe a right or a legal standard that was not clearly established when the defendant acted. Thus, the Court held in *Procunier v. Navarette*, 434 U.S. 555, 562–65, 98 S.Ct. 855, 859–61, 55 L.Ed.2d 24 (1978), for example, that prison officials were not liable for interfering with an inmate's mail because the interference occurred before there was any definite First Amendment protection for prisoners' mail privileges. On the other hand, as the *Harlow* Court concluded, "[i]f the law was clearly established, the immunity defense ordinarily should fail," unless the defendant "claims extraordinary circumstances and can prove that he neither knew nor should have known the relevant legal standard." 457 U.S. at 818–19, 102 S.Ct. at 2739.

■ In determining that the individual defendants were entitled to qualified immunity because the reach of the Pennsylvania criminal statutes may not have been clear, the district court misconceived the focus of the qualified immunity inquiry. As it applies here, the inquiry must focus

210a–211a.

instead on whether Losch had clearly established rights to petition the government in the manner that he did and to be free of malicious prosecution for that exercise. In fact, there was no ambiguity in the law guaranteeing Losch's First and Fourteenth Amendment rights, or in the legal standard imposed by the Constitution on police officials. The Supreme Court has clearly held that prosecution of a citizen in retaliation "for nonprovocatively voicing his objection" to police conduct impermissibly punishes constitutionally protected speech. *Norwell v. City of Cincinnati,* 414 U.S. 14, 16, 94 S.Ct. 187–188, 38 L.Ed.2d 170 (1973) (per curiam). The Fifth Circuit, applying *Harlow,* stated, "A police officer ... is ordinarily charged to know the probable cause requirement." *Trejo v. Perez,* 693 F.2d 482, 488 n. 10 (5th Cir.1982). Therefore, "[i]f an arrest lacks probable cause for its support it is, objectively speaking, in violation of clearly established law." *Id.* The law protecting Losch from police officers' use of their official position to launch a private vendetta was clearly established and not uncertain, in contrast to the circumstances before the Court in *Procunier v. Navarette, supra. See also O'Hagan v. Soto,* 725 F.2d 878, 879 (2d Cir.1984) (unsettled question of law regarding attachment of right to counsel). When a right is well established, as the Eighth Circuit recently said, "no one who does not know about it can be called 'reasonable' in contemplation of law." *Goodwin v. Circuit Court,* 729 F.2d 541, 546 (8th Cir.1984). *See Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975); *Hart v. Walker,* 720 F.2d 1436, 1441 (5th Cir.1983). Since defendants cannot satisfy the objective standard of *Harlow,* there was no need for the district court in connection with the qualified immunity defense to reach the question whether defendants "took the action with malicious intention to cause a deprivation of civil rights or other injury."

*Harlow,* 457 U.S. at 815, 102 S.Ct. at 2737 (quoting *Wood v. Strickland,* 420 U.S. at 322, 95 S.Ct. at 1001).[2] Instead, the defendants' reasonableness and good faith, *vel non,* in filing the criminal charges against Losch pertained only to their defense on the merits of the § 1983 claim, which as we have stated, presented a jury question.

## IV.

### Claim Against the Borough

■■■■ A local government may be sued under § 1983 only for acts implementing an official policy, practice or custom. *Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). As the *Monell* Court made clear, there can be no § 1983 liability under a respondeat superior theory: "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037. *See also Black v. Stephens,* 662 F.2d 181, 191 (3d Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982); *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1082 (3d Cir.1976); *cf. General Building Contractors Association v. Pennsylvania,* 458 U.S. 375, 391–95, 102 S.Ct. 3141, 3150–3152, 73 L.Ed.2d 835 (1982) (§ 1981). A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered. *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984).

■■■■ There is no evidence here of any policy or practice of the Borough of Parkesburg operating against the appel-

---

2. Defendants apparently have not pleaded or argued that there were any "extraordinary circumstances," *see Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738, and it seems unlikely there could have been any in these circumstances, *see Trejo v. Perez,* 693 F.2d at 488 n. 10 ("Whatever such extraordinary circumstances may be, their presence here has not been suggested nor do we find them."). However, we will not foreclose the district court's consideration of this issue on remand if properly raised.

lant. Appellant seeks to impose liability on the Borough on two bases. He argues first that Chief Thomas, one of the defendants, was a "de facto policy making official" and that therefore his actions represented official city policy, and, second that the Borough's "official policy not to hire trained individuals, or to properly train them" led to the issuance of the improper complaint. As to the first basis, we are not persuaded that Thomas' action in connection with the filing of the criminal charges against Losch is sufficient to constitute a municipal policy within the meaning of *Monell*. A policy cannot ordinarily be inferred from a single instance of illegality such as a first arrest without probable cause. *Walters v. City of Ocean Springs*, 626 F.2d 1317, 1323 (5th Cir.1980); *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir.1980), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1982).

The facts in this record are unlike those before us in *Black v. Stephens*, where we sustained the City's liability because the police chief "wrote and implemented an official police regulation [delaying any disciplinary investigation of a police officer's conduct until the underlying arrest was resolved] which the jury found proximately caused ... [the] fil[ing of] unwarranted charges against [plaintiff]." 662 F.2d at 191. In this case even if Thomas were the final authority with regard to police activities, which the Borough disputes, there is no regulation or evidence of any repeated action by Thomas with regard to filing of charges that can transmute his actions in the Losch incident into a general Borough policy.

Losch also claims that the Borough followed a practice of employing untrained officers and giving them "unbridled arrest powers." However, he produced no evidence that the Borough's general employment practices are deficient, or that defendants were inexperienced. The parties stipulated that Officer Wilson was certified under the Pennsylvania Municipal Police Officers' Education and Training Act. Wil-

son had one year's experience with the Chester County Sheriff's Department when he was hired by Parkesburg. Chief Thomas began his law-enforcement career in 1969 and was Chief of Police in Atglen, Pennsylvania, for seven years before assuming the same post in Parkesburg.

Further, assuming *arguendo* that plaintiff could recover under § 1983 for negligent supervision,[3] a question we do not reach here, the district court found, and we agree, that plaintiff has failed to show a causal link between his injury and the Borough's allegedly negligent practices.

We therefore affirm the grant of summary judgment for the Borough of Parkesburg.

## V.

### *Conclusion*

For the foregoing reasons set forth, we will reverse the judgment of the district court granting summary judgment for defendants Thomas and Wilson on plaintiffs' § 1983 claim and remand for further proceedings on the merits.

In view of our holding, we will also reverse the judgment of the district court, transferring the state law claims to state court, since the district court declined to exercise pendent jurisdiction over them only because no federal claims had survived. The summary judgment for the Borough of Parkesburg will be affirmed.

Each party to bear its own costs on appeal.

---

3. *See* Note, A Theory of Negligence for Constitu-

tional Torts, 92 Yale L.J. 683, 685–689 (1983).