Rose Marie TUTTLE, Individually and as Administratrix of the Estate of William Adam Tuttle, Deceased, Plaintiff-Appellee and Cross-Appellant,

v.

CITY OF OKLAHOMA CITY, a Municipal Corporation; and Officer Julian Rotramel, Individually and as an Employee of the City of Oklahoma City through the Oklahoma City Police Department, Defendants-Appellants and Cross-Appellees.

Nos. 82–2164, 82–2175.

United States Court of Appeals, Tenth Circuit.

Feb. 28, 1984.

Robert E. Manchester, McClelland, Collins, Bailey, Bailey & Manchester, Oklahoma City, Okl. (Susan Talbot, McClelland, Collins, Bailey, Bailey & Manchester, Oklahoma City, Okl., with him on brief), for defendant-appellant, cross-appellee Officer Julian Rotramel.

Michael C. Turpen, Atty. Gen. of Okl., David W. Lee, Asst. Atty. Gen., Chief, Federal Div., Oklahoma City, Okl., for amicus curiae State of Okl.

Diane Pedicord, Oklahoma City, Okl., for amicus curiae Oklahoma Mun. League.

Carl Hughes, Hughes, Nelson & Gassaway, Oklahoma City, Okl. (Michael Gassaway, Hughes, Nelson & Gassaway, Oklahoma City, Okl., with him on brief), for plaintiff-appellee and cross-appellant Rose Marie Tuttle.

Burck Bailey, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl. (Warren F. Bickford IV and Margaret McMorrow-Love, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., with him on brief), for defendant-appellant, cross-appellee City of Oklahoma City.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This matter is before us pursuant to 28 U.S.C. § 1291, the regular appeals statute, and 42 U.S.C. § 1983, dealing with the violation of constitutional and statutory rights.

Rose Marie Tuttle was the plaintiff in the court below. She brought this action against the defendants, Oklahoma City and Police Officer Julian Rotramel, individually and as administratrix of the estate of her deceased husband. She alleged deprivation of her husband's statutory and constitutional rights to life and liberty, contrary to 42 U.S.C. § 1983.

The cause was tried to a jury in the United States District Court for the Western District of Oklahoma. A verdict was returned in favor of Mrs. Tuttle in the amount of $1,500,000 actual damages against the City. The jury returned a verdict in favor of the defendant Rotramel, the officer who caused the damage by shooting and killing Tuttle. The jury found in favor of Officer Rotramel because the jury found that he acted in good faith. Oklahoma City has appealed the verdict against it and Mrs. Tuttle appeals the verdict and order to pay costs for Rotramel, the police officer.

This incident took place on October 4, 1980. The decedent William Tuttle was inside, and had been inside, the We'll Do Club in Oklahoma City. A complaint was made reporting an armed robbery in progress at the We'll Do Club. The party

who called the police described the alleged robber as a 37 year old male with brown hair and glasses. The description matched Mr. Tuttle, and the parties stipulated that Mr. Tuttle actually made the call. Police Officer Julian Rotramel was dispatched to the Club, and when he arrived there was no armed robbery in progress. The bartender testified that she informed Rotramel that no robbery had occurred. Decedent attempted to leave the Club, and Officer Rotramel told him to stay where he was. Decedent disregarded Rotramel and left. Tuttle did not at any time brandish a weapon. In fact, Tuttle made no overt threat. Nevertheless, Officer Rotramel drew his gun and shot the decedent in the back. The latter was a short distance from the officer and had gone down on one knee. No weapon was found on the decedent; there was allegedly a toy gun which was said to have been found in Tuttle's possession. This was not visible to the officer, but he said that he was apprehensive that the decedent had a weapon. Decedent died from the gunshot wound very soon after the incident.

A limited number of contentions have been asserted in support of the requested reversal. These are set forth and also discussed below.

1. *The contention that the trial court erred as a result of not directing a verdict against Rotramel on the issue of liability.*

Mrs. Tuttle argues that the facts of the case fail to support Rotramel's claim of good faith, and hence the trial court should not have allowed the issue to go to the jury. We here address this issue.

The good faith defense of police officers charged with constitutional violations was first recognized by the Supreme Court in *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967). In its most recent pronouncement on the good faith defense, the Supreme Court made clear that an officer's good faith must be judged by an objective standard. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738–9, 73 L.Ed.2d 396 (1982) (government offi-

cials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). *Harlow* reaffirmed the objective standard previously applied, but overruled earlier Supreme Court pronouncements that a subjective component existed as well. *See Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975) ("A school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights ... of the student"); *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90 (1974) ("It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with the good faith belief, that affords a basis for qualified immunity"); *Pierson v. Ray,* 386 U.S. at 557, 87 S.Ct. at 1219 ("If the jury found that the officer reasonably believed in good faith that the arrest was constitutional, then a verdict for the officers would follow, even though the arrest was, in fact, unconstitutional").

■ An officer's good faith is not an absolute defense to charges; it is an affirmative defense that must be pleaded and proved by the defendant officer. *See Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572; *Martin v. Duffie,* 463 F.2d 464, 468 (10th Cir.1972).

■ Under certain circumstances, the facts may negate the good faith defense as a matter of law. If the facts construed in the light most favorable to the defendant officer utterly belie his belief or the reasonableness of it, his defense should not be considered by the jury. *Butler v. Goldblatt Bros., Inc.,* 589 F.2d 323, 326 (7th Cir.1978). Jury instructions on an affirmative defense should only be given if reasonably supported by the evidence.

■ Defendant Rotramel admitted at trial that he violated Police Department policy

in shooting Mr. Tuttle. He testified however, that he believed Mr. Tuttle was a felon reaching for a gun. His belief was supported by some evidence. Officer Rotramel was responding to a report that a robbery had taken place. Apparently, Mr. Tuttle made the report, describing himself and reporting that the robber had a gun. Officer Rotramel testified that he attempted to stop Mr. Tuttle, that a struggle had ensued and that Mr. Tuttle repeatedly reached for his boot. Officer Rotramel claimed that Mr. Tuttle broke away and was again reaching for his boot, apparently retrieving a weapon, when Officer Rotramel shot him. The other witnesses to the shooting disputed these aspects of Rotramel's testimony. If the jury believed Officer Rotramel, however, it could find that he reasonably believed his response was permitted.

The trial court clearly thought the evidence was sufficient to send the issue to the jury, and the jury apparently believed Officer Rotramel's story. Inasmuch as the jury was properly instructed and since there is evidence which favors Rotramel, we cannot assume that the conclusion was improper. It is not enough that Officer Rotramel's good faith defense does not seem to be strongly supported in this case; we must decline to rule that it was inadequate as a matter of law. There was some evidence that he reasonably believed that his life was threatened and his actions were justified. Accordingly, we affirm the jury's finding that Officer Rotramel acted in good faith and thus deny the contention of Mrs. Tuttle.

2. *The contention of the City that the evidence was insufficient to justify submission to the jury.*

The City insists that the trial court erred in denying the defendant City's motions for a directed verdict and judgment notwithstanding the verdict. Its claim is that the trial judge held the City to a standard of ordinary negligence in failing to train Officer Rotramel, rather than the allegedly required showing of gross negligence or deliberate indifference. The argument is also that a single incident of police misconduct cannot establish *grossly* negligent training, and that, in light of the single incident here, the trial court should have granted the City's motion for a directed verdict and for judgment notwithstanding the verdict.

■ The plaintiff-appellee Mrs. Tuttle argues that extensive evidence, and not the single incident referred to, established the grossly negligent training provided by the City. She argues that virtually all of the evidence established the necessary link between the *inadequate* training and the constitutional deprivation. *Owens v. Haas,* 601 F.2d 1242 (2d Cir.1979). She claims that the trial judge recognized that gross negligence existed if the City had actual or imputed knowledge of the almost inevitable consequences that arise from completely inadequate training or supervision. See *Leite v. City of Providence,* 463 F.Supp. 585, 590–91 (D.R.I.1978). We agree that Judge West properly denied the City's motions and properly submitted the issue to the jury.

3. *Appellant's further contentions that the Judge's instructions to the jury were erroneous and that the judgment should be set aside because of these alleged error or errors.*

■ The argument of the City, taken as a whole, is that the jury instructions did not articulate the law governing the case. Particularly, the City challenges the instruction to the jury that it could find for the plaintiff based upon a single incident of the use of force, from which the jury could infer inadequate training. The plaintiff-appellee, Mrs. Tuttle, contends that the sufficiency of the instructions is not usually to be determined by error in any single instruction, but rather by viewing the charge as a whole. *United States v. Jenkins,* 701 F.2d 850 (10th Cir.1983). We regard the challenged instruction to be proper, and we consider that the instructions, taken as a whole, properly state the law of municipal liability and affirmative defenses. Apart from the killing incident, there was ade-

quate evidence. Even the officer admitted the inadequacy of the training.

There was much complaint on the part of the City to the effect that the standard of wrong-doing submitted by the court was that of ordinary negligence. However, the instructions given do not agree with this. The instruction which addresses the applicable standard of gross negligence and other elements of the claim is as follows:

You are instructed that the City of Oklahoma City is not liable for the deprivation of the decedent's constitutional rights solely because it hired and employed the defendant Rotramel. But there are circumstances under which a city is liable for a deprivation of a constitutional right. Where the official policy of the city causes an employee of the city to deprive a person of such rights in the execution of that policy, the city may be liable.

This occurs when a city implicitly or tacitly authorizes, sanctions, ratifies, or acquiesces in the constitutional deprivation in such a manner that such constitutional deprivation can be found to result from the execution of a city's official policy or custom.

In the circumstances of the case before you, the City of Oklahoma City can be found to have authorized, sanctioned, or acquiesced in any denial of the decedent's rights only if an official policy which results in constitutional deprivations can be inferred from acts or omissions of supervisory city officials and if that policy was a proximate cause of the denial of the civil rights of the decedent.

It is the plaintiff's contention that such a policy existed and she relies upon allegations that the City is *grossly negligent* in training of police officers, in its failure to supervise police officers, and in its failure to review and discipline its officers. The plaintiff has alleged that the failure of the city to adequately supervise, train, review, and discipline the police officers constitutes *deliberate indifference* to the constitutional rights of the decedent and acquiescence in the proba-

bility of serious police misconduct. Furthermore, the policy of placing police officers on duty who were inexperienced and unqualified to act in a particular situation in applying the use of a deadly weapon constitutes deliberate indifference to the rights of the decedent.

The City, of course, has denied the plaintiff's allegations and further denies the existence of an official policy of the City of Oklahoma City which results in constitutional deprivations.

The existence of such a policy is a question of fact for you to determine. The policy, if it existed, need not be expressed in writing; it may be an implicit policy. An official policy can be inferred from the acts of a municipality's supervisory officials, as well as from its omissions, if the inaction amounts to deliberate indifference or to tacit approval of an offensive act. (Emphasis supplied.)

■ Contrary to the present contention of appellant, the trial judge, in outlining the standard, required proof of the City's *gross negligence.* The jury was told that inadequate training of Rotramel amounting to gross negligence and deliberate indifference to the rights of the decedent was necessary in order to deprive the decedent of his right to liberty and life without due process. In other words, the gross negligence standard was plainly set forth as it pertains to the civil rights claim under § 1983.

The instructions were not erroneous. The gross negligence-indifference standard was sufficient as instructed. As a result the court was correct in denying dismissal relief to the City.

4. *The appellant City's argument that the alleged liability of the City is based only on training and supervision arising out of a single incident.*

The city cites case law in support of the doctrine that a single incident is not adequate evidence to establish liability for inadequate training and supervision. *McClelland v. Facteau,* 610 F.2d 693, 696 (10th Cir.1979). There it is noted that a police

chief could be held liable if he neglected his duty to train subordinates and establish department procedures. He must provide protection for constitutional rights and supervision to correct misconduct of which he has notice. The showing that the individual police officer may have violated the law on an isolated occasion was said not to be sufficient to raise an issue of fact for purposes of imposing liability on police chiefs for failure to train subordinates and establish department procedures that would provide protection for constitutional rights. The court added that there was a genuine issue of material fact as to whether defendant police chiefs violated the duty of supervision to correct misconduct of which they had notice.

■ Although the *McClelland* case is entirely different from the case at bar, involving as it does police chiefs failing to supervise, the principle is much more difficult to establish than the violation here. The act here was so plainly and grossly negligent that it spoke out very positively on the issue of lack of training, the problem which is presented. We are not to be understood as holding that there exists a guarantee that all persons whose constitutional rights are violated by municipal employees will recover from the City. Our holding requires proof of a city's violation of its duty such as to constitute deliberate indifference to the rights of its citizens. Here there was plenty of independent proof of lack of actual training. In this case the individual defendant had been on the police force for a very short period of time; moreover, he admitted his lack of training to cope with robberies. Nevertheless, he was allowed to go in on a suspected robbery by himself. Also, his gross failure to successfully handle the problem clearly demonstrated his complete lack of training and also his lack of ability. Thus, the incident itself, as well as independent evidence, attested to the officer's lack of knowledge and ability. He claims to have considered Tuttle to be a robber but instead of pursuing him for the purpose of questioning, he fatally shot him without the least justifiable provocation. The single incident rule is not to be considered as an absolute where the circumstances plainly show a complete lack of training.

Our conclusion must be that this action, coupled with the clearly inadequate training, demonstrate the City's gross negligence and deliberate indifference to the rights of the decedent.

5. *The Damages Requested by Plaintiff*

The plaintiff has sought on behalf of the estate and herself the following damages from the defendants, jointly and separately. The trial court described the plaintiff's alleged damages as follows:

$2,134.65 for burial expenses;

$984.60 for hospital and medical expenses;

$55,000.00 for loss of consortium and grief as the surviving spouse;

$2,000,000.00 for mental anguish and physical pain suffered by the decedent prior to his death;

$455,000.00 for pecuniary loss, namely loss of future earnings of the decedent, and,

$250,000.00 for grief and loss of companionship of the children.

The plaintiff also sought $1,500,000.00 in punitive damages from the defendant Rotramel.

We have called attention to the numbers which were contained in the complaint of the plaintiff and which the judge mentioned in his instructions for the purposes of explaining, in part at least, how the jury arrived at the verdict returned. This court is not in a favorable position to issue a remittitur with respect to these damages.

The judgment of the district court should be and the same is hereby affirmed.

BARRETT, Circuit Judge, concurring:

I concur because I am convinced the trial court properly and adequately instructed the jury. Even so, I am at a loss to ascertain the basis for the jury's obvious finding that Officer Rotramel was so lacking in training to cope with robberies that

such constituted *proof* of Oklahoma City's violation of its duty to train Officer Rotramel to the extent that, as the opinion pinpoints it, it amounted to Oklahoma City's "deliberate indifference to the rights of its citizens."

I have not been able to ascertain what facts the jury relied on to render Officer Rotramel's actions unreasonable. The factual background, as I view it, consists of the false call placed by Mr. Tuttle about the robbery at the Club involving an armed person who met his description, Officer Rotramel's immediate confrontation with Mr. Tuttle upon entering the Club, Rotramel's identification of Tuttle as the reported armed robber, Rotramel's testimony that he saw Tuttle reach down at which time Tuttle was ordered to stay put, Tuttle's hurried exit from the Club in the darkness with Officer Rotramel in pursuit, the fatal shooting by Rotramel when he observed Tuttle bent down near a vehicle and reaching for that which Rotramel believed to be a gun, and finally the discovery of a toy pistol on Mr. Tuttle's person following the shooting. Beyond this, I have not been enlightened with the factual basis of Oklahoma City's "deliberate indifference" in the context of the facts of this case.